**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GULF COAST BANK & TRUST COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 11-cv-2617 |
| | ) | |
| HOME STATE BANK, N.A., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's motion, brought pursuant to 28 U.S.C. § 1404(a), to transfer this case to the Western Division of the United States District Court for the Northern District of Illinois [14]. For the reasons set forth below, the Court grants Defendant's motion [14].

**I.      Background**

On December 27, 2008, Defendant Home State Bank ("HSB"), a national banking association, executed a business loan agreement, a note, and a mortgage with Thomas Investments I, LLC and Thomas Investments II, LLC (collectively, the "Borrowers") in the principal amount of $1,530,000.00. The loan was personally guaranteed by two individuals, James L. Schaid and Samuel J. Diamond (collectively, the "Guarantors"). On January 20, 2009, HSB executed a Loan Participation Purchase Certificate and Agreement with Independent Bankers' Bank ("IBB"), by which IBB became a participant in the loan. IBB purchased 68.6275% of the loan in consideration for a payment of $1,050,000.00.

On December 18, 2009, IBB was closed by the Illinois Department of Financial and Professional Regulation, Division of Banking, and the Federal Deposit Insurance Corporation

(the "FDIC") was named the receiver of IBB. The loan matured on December 27, 2009, but the Borrowers failed to repay the amount due. According to the complaint, the Borrowers have failed to repay amounts due in the Loan notwithstanding the loan's maturity, and thus are in default on the loan. On or about May 10, 2010, Plaintiff Gulf Coast Bank & Trust Company ("Gulf Coast") purchased IBB's interest in the loan from the FDIC. The FDIC executed an assignment of IBB's rights under the participation agreement, whereby Gulf Coast succeeded to all of IBB's rights under the agreement. HSB retained the right to administer the loan in the participation agreement, with certain restrictions.

According to the complaint, HSB is refusing to exercise its rights to collect on either the note or the mortgage or the personal guarantees executed by the Guarantors subsequent to the Borrowers' Default. Gulf State also alleges that HSB has refused to provide needed information despite repeated requests that it do so. On March 1, 2011, counsel for Gulf Coast wrote a demand letter to HSB in which Gulf Coast demanded that HSB either repurchase Gulf Coast's interest in the loan at a purchase price equal to the amount of the participation investment or, in the alternative, turn over all records concerning the loan and the Guarantors so Gulf Coast can assume direct administration of the loan. HSB responded in a letter dated March 8, 2011, in which it mailed loan documents to Gulf Coast.

On April 19, 2011, Gulf Coast filed a three-count complaint against HSB, asserting claims for breach of contract (Count I); breach of fiduciary duty (Count II); and declaratory judgment (Count III). In short, the complaint alleges that the borrowers have defaulted on the loan at issue, and that HSB has not taken the action required by the participation agreement. Gulf Coast is a Louisiana state chartered bank with its principal place of business and "nerve

center" in New Orleans, Louisiana. HSB is an Illinois banking corporation with its principal place of business and "nerve center" in Crystal Lake, Illinois.

## II.     Legal Standards Governing Section 1404(a) Motions

A district court, "[f]or the convenience of parties and witnesses, in the interest of justice, * * * may transfer any civil action to any other district court where" jurisdiction and venue would have been proper at the time the suit was initiated. 28 U.S.C. § 1404(a); *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (situation at the initiation of the suit affords the critical timeframe). The moving party has the burden of establishing "that the transferee forum is clearly more convenient," based on the particular facts of the case. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). The district court has the authority to "make whatever factual findings are necessary * * * to determin[e] where venue properly lies." *In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008). Section 1404 has been applied to requests for intra-district transfers. See *Navarrette v. JQS Property Maintenance*, 2008 WL 299084, at *1 (N.D. Ill. Jan. 29, 2008).

In evaluating motions brought pursuant to Section 1404(a), the Court considers: (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of witnesses, (4) the interests of justice, and (5) the location of the material events giving rise to the case. *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir. 1996) (listing the first four statutory factors); *Continental Cas. Co. v. Staffing Concepts, Inc.*, 2009 WL 3055374, *2-3 (N.D. Ill. Sept. 18, 2009) (same; elaborating on private- and public-interest sub-factors).[1] Although the statute itself lists only the first four factors, considering additional factors, such as

---

[1] Beyond the statutory factors, there appears in the case law variations among courts as to the specific factors that should be analyzed, as well as the classification of those factors. Compare, *e.g.*, *Am. Family Ins. ex rel. Suddarth v. Wal-Mart Stores, Inc.*, 2003 WL 1895390, *1 (N.D. Ill. Apr. 17, 2003), with *Graham v. United Parcel Svc.*, 519 F. Supp. 2d 801, 808-09 (N.D. Ill. 2007). More precisely, courts vary in their formulations but generally, in the end, consider the same factors.

location of the material events, is appropriate: the Seventh Circuit teaches that the specified statutory "factors are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case." *Coffey*, 796 F.2d at 219 n.3; see also *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) (explaining that the broad discretion accorded the trial court is a product of the "in the interest of justice" language of the statute); *Am. Commercial Lines, LLC v. Northeast Maritime Institute, Inc.*, 588 F. Supp. 2d 935, 945 (S.D. Ind. 2008) (observing that courts "entertain a wide variety of factors" in evaluating venue transfer motions).

The first factor, the plaintiff's choice of forum, typically is accorded significant weight. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp v. Gilbert*, 330 U.S. 501, 508 (1947)). The Seventh Circuit has stated, however, that the Plaintiff's choice of forum has only "minimal value where none of the conduct occurred in the forum selected by the plaintiff." *Chicago, Rock Island, & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955).

With regard to the second factor, courts consider the residences and resources of the parties—in essence, their "abilit[y] to bear the expense of trial in a particular forum." *Von Holdt v. Husky Injection Molding Sys. Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995). Examination of the third factor, the convenience of witnesses, emphasizes not just the raw number but "the nature and quality of the witnesses' testimony." *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 858 (N.D. Ill. 2007). Many courts state that, all other things being equal, the convenience of non-party witnesses is accorded greater weight than the convenience of party witnesses, the latter of whom have to participate (or rather, whose non-participation brings more easily administered

consequences).  See, *e.g.*, *First Nat'l Bank v. El Camino Resources, Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006).  At the same time, a movant cannot meet its burden with only vague statements about the inconvenience imposed by the litigation on non-party witnesses: "The party seeking transfer must specify the key witnesses to be called and make a generalized statement of their testimony."  *Id.* (citing *Federated Dept. Stores, Inc. v. U.S. Bank Nat'l Assoc.,*, 2001 WL 503039, *4 (N.D. Ill. May 11, 2001)); see also *Am. Family Ins. ex rel. Suddarth v. Wal-Mart Stores, Inc.*, 2003 WL 1895390, *2 (N.D. Ill. Apr. 17, 2003) (defendant must show that the testimony of the particular witnesses is necessary to its case).

The broadly worded fourth factor, "the interest of justice," captures several considerations, including

> relative ease of access to sources of proofs; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; the possibility of a view of the premises; and the state of the court calendar both in the District where the case is pending, and in the District to which it is sought to have the case transferred.

*Igoe*, 220 F.2d at 303; see also *In re Nat'l Presto Indus., Inc.*, 347 F.3d at 664 (discussing the "subpoena range" of the district court).  Courts also consider their familiarity with the applicable law and "the desirability of resolving controversies in their locale."  *Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 841 (N.D. Ill. 2009).

The fifth factor, the location of the material events giving rise to the case, becomes comparably more important when it differs from the plaintiff's choice of forum.  *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007).

## III.    Analysis

As a threshold matter, the parties agree that venue would be proper in both this division and in the proposed transferee court; they disagree only on whether the Eastern or Western

Division is the more appropriate forum.  See also 28 U.S.C. § 1391(a)(3) (civil action in which jurisdiction founded on diversity of citizenship may be brought in "a judicial district where any defendant resides" if all defendants reside in the same State); § 1391(c) (corporation resides, for venue purposes, anywhere that it is subject to personal jurisdiction at the time of an action's commencement).  Therefore, the relevant factors are the convenience of the parties or witnesses and the interests of justice.

Plaintiff Gulf Coast's choice of forum (the first factor) weighs in favor of denying Defendant HSB's motion.  However, in these circumstances, Plaintiff's preference gets "minimal" weight because the events giving rise to the suit occurred predominantly in the Western Division—and not at all in the Eastern Division—of the Northern District of Illinois. Plaintiff is a Louisiana chartered bank, and thus not a resident of the Eastern Division or the state of Illinois.  Plaintiff has not pointed to any connections that it has with the selected forum beyond repeatedly highlighting the fact that it chose the Eastern Division.  Furthermore, Plaintiff is attempting to enforce a contract which it did not take part in negotiating and which it was not an original party.  Plaintiff's standing arises from its status as an assignee of IBB, which was the other party to the original contract with HSB and, like HSB, is located within the Western Division.  Thus, Plaintiff's choice of forum lacks any significant connection with the operative facts giving rise to the claim.  See *Igoe*, 220 F.2d at 304; see also *Navarrette*, 2008 WL 299084, at *2; *Simes v. Jackson Nat'l Life Ins. Co.*, 2005 WL 2371969, at *2 (N.D. Ill. 2005); *Plotkin v. IP Axess, Inc.,* 168 F.Supp.2d 899, 902 (N.D. Ill. 2001); *Sanders v. Franklin,* 25 F. Supp.2d 855, 858 (N.D. Ill. 1998); *Von Holdt v. Husky Injection Molding Systems, Ltd.,* 887 F.Supp. 185, 188 (N.D. Ill. 1995).

As alleged in the complaint, Defendant's principal place of business—its "nerve center"—is Crystal Lake, Illinois. All of Crystal Lake is situated within McHenry County, Illinois, which in turn is located within the Western Division. Furthermore, the transaction at issue took place in Defendant's main branch, located in Crystal Lake, and Defendant represents that all of the records and documents relating to the transaction are located in or near Crystal Lake. Also, the property pledged as collateral is located in either Boone (one of two counties included in the Rockford metropolitan area) or McHenry Counties. Thus, the situs of the underlying events, as well as the sources of proof, are located within the Western Division.[2]

According to Defendant, many of the witnesses to the underlying loan reside in the Western Division. Plaintiff maintains that HSB has not identified in detail the witnesses and testimony that will be given at trial. However, Defendant has identified Keith Leathers, its Senior Vice President and the loan officer responsible for monitoring the business loans at issue in this case, as well as both the Borrowers in the original underlying loan and the Guarantors to that loan, and noted that they all reside in or do business in the Western Division. With respect to out-of-state witnesses, Defendant presumes, and Plaintiff does not rebut, that any witnesses to the eventual assignment of the loan or from the Plaintiff (which is headquartered in Louisiana) would be arriving in Chicago via O'Hare Airport. As pointed out by Defendant, the Western Division is no more inconvenient to any such out of state witnesses as is the Eastern Division. See *I & M Rail Link v. Northstar Navigation, et al.,* 21 F.Supp.2d 849, 858 (N.D. Ill. 1998)

---

[2] Plaintiff concedes that "the hard copy records and other evidence in this matter may be located in the Western Division," but argues that such records and evidence likely are stored electronically, making them available anywhere in the country. Plaintiff also contends that even if the documents are not stored electronically, it would not be too inconvenient for Defendant to transport the documents to Chicago. Despite Plaintiff's arguments, the proper question is whether the proposed venue is more convenient than the originally chosen venue. When the Court considers the *convenience* of accessing the sources of proof, the location of the sources of proof clearly weighs in favor of the Western Division over the Eastern Division.

(holding that "[A]s for convenience, access to Rockford is not unduly burdensome from Chicago * * * especially if traveling through O'Hare Airport which is northwest from the Loop."). While Plaintiff maintains that it would not be particularly inconvenient for either side to litigate in the Eastern Division, Plaintiff agrees that "the Western Division is not more inconvenient to any such out of state witnesses as is the Eastern Division." And while litigating in Chicago may not be as inconvenient for the in-state witnesses as litigating in another state, it is clear that the Western Division is more convenient for the in-state witnesses.

In this case, the final factor, the interests of justice, "is given less weight, as a transfer between divisions does not involve any conflict of laws issues, nor does it affect the familiarity of the trial court * * * [with] the governing law or the availability of unwilling witnesses to service of process." *Westchester Fire Ins. Co. v. Carolina Cas. Ins. Co.*, 2004 WL 170325, at *3 (N.D. Ill. Jan. 15, 2004). This does not mean that this factor carries no weight. In *Concrete Structures of Midwest, Inc. v. Treco Constr. Servs. Inc.*, the court held that where (1) the events giving rise to the litigation occurred in the Eastern Division, with only a minimal connection to the Western Division, (2) the balance of convenience to the parties and witnesses favored transfer to the Eastern Division, and (3) the case was still at the initial stage, transfer was appropriate and the interests of justice were served. 1996 WL 67213, at *4 (N.D. Ill. Feb. 16, 1996). Similarly, in this case, the connection between the underlying facts and the Eastern Division is non-existent, most if not all of the events leading to this litigation occurred in the Western Division, the balance of convenience to the parties and witnesses favors transfer to the Western Division, and this case has not progressed to the point where a transfer would significantly delay the proceedings. See, *e.g.*, *Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*,

598 F. Supp. 2d 836, 841 (N.D. Ill. 2009) (noting that it is generally desirable to resolve a controversy in its locale).

In sum, although the convenience factors are less of an issue when deciding between two divisions within an hour and a half of one another (as opposed to deciding between districts in different states), the Western Division of the Northern District of Illinois affords a superior forum for litigating this case. Here, the injuries did not occur in the Eastern Division, no witnesses have been identified that reside in the Eastern Division, Defendant and the sources of proof are located in the Western Division, and Plaintiff has not pointed to any connection it has with the Eastern Division, beyond its preference to litigate here. The case for giving weight to Plaintiff's preference is weakened by the location of the events giving rise to the claims, as well as the fact that the hardship to Plaintiff in litigating this case in Chicago or Rockford is equal. Thus, after weighing the relevant factors, the Court concludes that the Western Division provides the more convenient forum and that transfer is appropriate. See, *e.g.*, *Simes*, 2005 WL 2371969, at *3 (holding that it is "decidedly more inconvenient" for a McHenry County litigant to litigate a case in Chicago rather than Rockford).

**III.    Conclusion**

For the foregoing reasons, the Court grants Defendant's motion to transfer this case [14] and directs the Clerk of the Court to transfer this matter to the Western Division for the Northern District of Illinois.

Dated:  November 4, 2011

_____
Robert M. Dow, Jr.
United States District Judge

9